Good morning. May it please the court. My name is Patricia Barnes. I'm the appellant and I would like to reserve two minutes for rebuttal. I would also, before I begin, I want to acknowledge the state of the record in this case, which is less than ideal. I am an outsider and not a litigator and I don't think I'm entirely responsible for it. But I just want to say that after over a year, I've gotten a much better grasp of the federal rules. I think going forward, things will be smoother. Counselor, can I just note, I don't know if I called you the same, but you're coming through your voice is quite fuzzy. Can you maybe move back a little bit at my health? I'm not sure of that. Can you hear me now? Is it okay? It's a little better. How's this? A little better. That's fine. Thank you. The question you'd be citing in this appeal is whether the district court properly dismissed with prejudice on the grounds of futility, plaintiff's claims of discrimination and reprisal. First, the district court's order was issued prior to the U.S. Supreme Court ruling in Babb v. Wilkie on April 2020, which established the proper standard of causation in federal sector age discrimination cases. In Babb, the court said, ADA federal sector provision is violated when age plays any part in the way a personal decision is made, and a federal personnel action must be made in a way that is not tainted by a differential treatment based on age. There is ample evidence in this case that the process was tainted by age. Counsel, let me just ask you specifically, what evidence do you have that Wilkins was motivated by age discrimination with regard to your disparate treatment claim? And specifically, where in the record would you refer us? Well, the disparate treatment claim is based on the practices that the Social Security Administration had, the so-called neutral practices that had a disparate impact on older applicants. OK, but remember, my question is, what evidence do you have that Wilkins was motivated by age discrimination with regard to your disparate treatment claim? The disparate treatment claim is based on the fact that the recruitment produced 27 qualified applicants of whom only one was over the age of 40, because it was based on two institutions that had an age far under the age of 40. I thought there were two and one of them was selected. Am I mistaken? Yes, you're correct. But I found out about the openings by chance, not through the recruitment, because I was not a law school student and I was not an outgoing Peace Corps volunteer. Those are both institutions that have populations with ages way under 40. The two, the older male outgoing Peace Corps volunteer that he was 47 years old, he was only selected after several younger, less qualified applicants rejected the job. There were five vacancies. He was the ninth selected. The first five applicants were all under the age of 40. Several declined the position. Does that matter for purposes of our analysis? Yes, because ultimately selected. Well, it doesn't it doesn't really matter, except that it shows he also was a victim of repeated age discrimination because he was more qualified than several of the selectees, if not all of them. So it does matter. It doesn't matter in the sense that older women, all the research shows are subject to greater hiring discrimination than men are. And so it doesn't it doesn't say anything about the fact that he was hired. It's not a negative inference on my part, because I believe that the issue in this case was this selection officer just didn't want to work with an older woman. So the problem with the Social Security Administration has is it's never addressed the issues in Preppied v. Affinity Gaming Blackhawk, which is a 10th Circuit case. And it involved a summary judgment, not a failure to state a claim. But the defendant has said the complaint didn't provide sufficient statistical evidence, but it provided the quantum of evidence that was deemed sufficient in Preppied on a motion for summary judgment. So the complaint states a solid, solid claim of disparate impact discrimination. If I could ask you on the disparate impact, you focus on the composition of the pool that did occur. Usually in this kind of claim, you would say that if they had not used their practices, the pool would have been much more favorable to older people. Did you have any evidence of that sort, or would you say that's just common sense? Because I didn't see anything statistical about what would have happened if they had not used their practices. Well, their recruitment primarily targeted a law school, and there's no evidence the law school made the vacancies known to alumni, and an office of outgoing Peace Corps volunteer. Both of those have populations that the average age is way under 40. So if they had, there was no reason for them to hire these personnel to begin with under the accepted service. They hired every other employee through competitive recruitment. They did, but the issue is that older workers had no way of knowing these positions existed. I found out about it quite by chance because I saw there was an ad on USA Today for a legal assistant, and I inquired because it said that a new office was opening in Reno. So the thing is, older workers can't apply for jobs if they don't know they exist. This was post the Great Recession. There was terrible unemployment in Reno. Unofficial estimates was it was 25%. Lots of attorneys in Reno would have jumped at the chance to get these jobs, but they had no way of knowing these jobs existed except through the indirect circumstance that I used. So did your blog ever call attention to the employment discrimination of the SSA in particular? Yes, it did. The blog started around 2010, and it focused initially on legal developments with respect to harassment and discrimination. And the story, so I would pick, there would be an appellate decision, and I would write about that for the blog. There were many decisions that involved the federal government and the Social Security Administration as time went on. So the point of the blog was to give employers and employees an opportunity to get a reliable resource so they understood their rights. I'm sorry, Judge Smith. No, no, please go ahead. Where in the record is an allegation or anything that would suggest that your blog specifically complained about the Social Security Administration practices? Well, I have two answers to that. I don't think that's come up. That was not an issue that came up. Okay, so counsel, so you agree that there is nothing in the record where there is an allegation or evidence that your blog specifically complained about the Social Security Administration's practices? Here's the point I would make. Counsel, my question to start with is a yes or a no question. Do you agree that there is nothing in the record that you can point to where you allege that your blog complained about the Social Security Administration practices? I cannot think of a thing in the record. But I don't think that's a dispositive issue because there's lots of case laws showing that the policies do not have to be specific. For example, the, let's see, the, let me find it, let me find it. Counsel, let me suggest this. You're over your time now. We'll give you a minute of rebuttal. So let's give you a chance to reflect on your answer to Judge Bennett. Let's hear from the Social Security Administration and then we'll give you an opportunity to reply. Ms. Vance? May it please the Court, Your Honor. Holly Vance on behalf of Andrew Saul, the Commissioner for the Social Security Administration. Good morning, Your Honors and Ms. Barnes. It wasn't the right fit, Your Honors. That's what the second amended complaint alleges here. This case is not about age. And I know Your Honors asked about some of the specific reasons that Mr. Elkins offered for this non-selection. And he offered a multitude, Your Honor, and none of them have anything to do with age. Counsel, I'd like you to focus on, for the disparate impact claim, the fact that the advertisements or that the job announcements was the Peace Corps and a law school. I mean, isn't that enough to survive this kind of emotion that where they're not publicly advertised, that they're in the accepted service, so there isn't the kind of public advertising it's like for a legal assistant position, and the two places that are told about the vacancy are, at least to my mind, clearly places where you're going to have young people and not people over 40. Why isn't that enough to survive this kind of emotion with regard to the disparate impact claim? Well, first of all, Your Honor, Ms. Barnes and at least one other candidate over 40 did end up interviewing and saw these job opportunities. So those policies did not preclude older workers from applying. So that's the first point I want to make. But if you take a look at Watson and Smith, I think that they require more, Your Honor. We're at the Iqbal Twombly stage, and the standard is there. The standard there is Ms. Barnes must show an entitlement to relief. She can't just say that older workers are impacted. She must offer some sort of statistical evidence to link these policies to excluding older workers. And I think the Second Amendment complaint falls short in that regard. And if you look at the U.S. Supreme Court— Whether these cases help you or focus, I'd ask your friend, do you need a comparison? That is, again, most of these cases I've seen would say something like, you know, you use this practice and it's targeted to young people. If you hadn't done that, it would have been something else. And then maybe the other side comes back with some reason. Is there anything in the record that has any other reason? That is, was the law school cheaper? Couldn't they have told the Reno Bar Association at least? Because to me, the fact that only mostly young people applied does not get your adversary there, but the fact that it's common sense that if they had gone more widely, even by telling the Bar Association, at least maybe the pool would have been bigger. Any thoughts there? I mean, did they just think that young law graduates would be more malleable or would be easier to train or something of that sort? Well, again, Your Honor, we're just limited to what's in the Second Amendment complaint. And so we cannot guess as to these reasons why this occurred. We've got to look at what is in the Second Amendment complaint. The Second Amendment complaint offers three policies that are fairly vague on their face. You know, unfettered discretion of selecting officers, referring these positions to the accepted service category. And I just think, first of all, those are vague out of the gate. But even if we accept them as legitimate, there's nothing to link those policies to the exclusion of older workers. I mean, all that is stated in the Second Amendment. At the beginning of that, I think you said there are three things, accepted service, discretion. But then the third, I thought, was informing only informing the law school and the Peace Corps. Well, I guess actually really there may be four, Your Honor. So assigning attorneys to the accepted service. The Social Security Administration has no standard practice for recruitment. Selecting officers have unfettered discretion to recruit as they wish in the accepted service. And I guess a fourth would be what you mentioned earlier. The reason I put that. The announcement was not made public. Well, but it's not just that it wasn't made public at all in the sense that a lot of times you don't make things public so that your uncle's son can get the job. But when you do go to a couple of groups and you don't go, you know, at least a bit more widely. Again, I don't know whether we can use common sense or not. But, you know, Mr. Elkin's a bit deposed to some degree. I mean, he gave some answers. There's nothing anywhere that would say why you didn't tell the Bar Association. I don't believe there's anything to that effect in the Second Amendment complaint. But, Your Honor, I want to focus you on the allegations in the Second Amendment complaint. Ms. Barnes outlines those four policies. And then she follows it up with the following allegation that these policies have a disproportionate impact on older workers. That is too big and ambiguous to show an entitlement to relief. We're focusing on the complaint now. And as you know, at this point, we have to take the allegations in the complaint as true. As you know, the bar for a disparate impact claim is really quite low. And I wonder whether her complaint doesn't show that because of certain hiring and advertising decisions taken by Elkin, that the applicant pool skewed much younger, kind of along the line of what Judge Boggs pointed out. Isn't that enough to, if you will, survive a 12B6 motion? Well, she may lose down the road. I get that. But at this point, isn't that enough given the low bar that has to be met? No, Your Honor, I don't believe it's enough. And if you look at the U.S. Supreme Court decisions of Watson and Smith, they're quite clear in stating the plaintiff must identify specific employment practices and link them up to statistical disparities. Counsel, in Hawaii, we have a division of our bar called the Young Lawyers Division. Would it make any difference if instead of the Peace Corps, one of the two places this announcement got sent was the Young Lawyers Division of the Nevada Bar? Would that have been enough or would your argument still be the same if it were the Young Lawyers Division of the Nevada Bar instead of the Peace Corps? My argument would be the same because you need that statistical link. She's got to offer additional information explaining how is it so that older workers are excluded as a result of these policies. So even if it is generally known or could be inferred on a 12B6 motion that the people at the law school and the Peace Corps are all far younger than, say, people in their 40s, that's not enough, even if that's the only place the announcements go with no public announcement, that you still are saying you need some sort of statistical allegation to survive a 12B6, no matter what the common sense or evidence is as to the limited nature of the targeted groups. I believe that's what the Supreme Court cases of Smith and Watson required on it, yes. And I'll agree with you if you're going to talk about younger members of the Bar Association. That might be a little closer to getting there than what we have here. But I don't think it gets us across the threshold from the possible to the plausible. Again, the standard, Iqbal, Twombly, you must show an entitlement to relief. We can't assume an entitlement to relief, Your Honor. And I think that's what your position is advocating for. So I think that falls short. It is whether it's possible. And in this case, the fact that it groups you lower, doesn't that make it plausible? Again, I don't know what the success in the long run is, but isn't that plausible under Twombly, Iqbal? I view it as possible, not plausible, Your Honor. I don't think we've tipped the scale. Okay. You've used up your time. Let me ask my colleague whether either has additional questions for Ms. Banks. No. Thank you very much. Thank you, Your Honor. We're going to give Ms. Barnes a minute of rebuttal. Under Ruling 8A2, a complaint needs to have enough facts to show the circumstances of an adverse employment action rise to a plausible inference. The process was tainted by age discrimination. The disparate treatment claim not only has, is there that inference, but there is statistical evidence that shows this. 26 out of 27 applicants were under the age of 40. I should say 25 of the 27 were under the age of 40. One of them happened to be an older Peace Corps, a former Peace Corps volunteer, but I was not part of the recruitment because I never saw the vacancy. So, if you look at Prapeet V. Affinity Gaming, the 10th Circuit case, you will see that the statistical evidence that I've offered is sufficient to make this comparison. So, we've given you the additional minute of rebuttal. We thank both counsel for their arguments. They're helpful to us. The case of Barnes v. Saul is submitted. Thank you. Thank you, Your Honor. We will now go to the last case for argument for the day, which is Ciara v. Campbell.
judges: Boggs, M. Smith, Bennett